THE STATE OF NORTH DAKOTA, upon the relation of O. B. Herigstad, State's Attorney of Ward County, North Dakota, Respondent, v. WALTER McCRAY, MALINDA McCRAY, LILLIE DOE, True Name Unknown, and JOHN B. GROWE, Appellants.

(186 N. W. 280.)

**Constitutional law — nuisance — statute authorizing injunction to abate bawdy-house nuisance held constitutional.**

1. Section 9645 of the Compiled Laws of 1913, which provides for the granting of a temporary injunction at the commencement of an action to abate a bawdyhouse nuisance, is not unconstitutional as depriving a person of life, liberty or property, without due process of law.

**Nuisance — human habitation not a nuisance per se.**

2. A human habitation is not a nuisance per se and, to be a nuisance, it must have become inherently dangerous or subjected to some harmful or unlawful use.

**Nuisance — property not a nuisance per se may not be destroyed summarily without notice.**

3. Property which is not a nuisance per se may not be summarily and without notice or hearing, taken or destroyed in order to abate a

nuisance. It can be treated as a nuisance only after it is adjudicated to be such.

**Nuisance — searches and seizures — statute directing seizure of property alleged a bawdyhouse nuisance held unconstitutional and to authorize unreasonable seizure.**

4. Section 9646 of the Compiled Laws of 1913, which directs the seizure and retention of property alleged to be used as a bawdyhouse, which seizure is without notice and without a hearing to determine whether such place be a nuisance in fact, is unconstitutional in that it directs the taking of property without due process of law and violates the security of persons in their houses by directing an unreasonable seizure of the same.

Opinion filed Dec. 30, 1921.

Appeal from the District Court of Ward County, *Moellring, J.*

Reversed in part.

*E. R. Sinkler,* for appellant.

*O. B. Herigstdd,* for respondent.

BIRDZELL, J. This is an action brought to abate a nuisance. The appeal is from an order entered denying the motion of the defendants to vacate a temporary restraining order and to discharge a writ of seizure.

The action was instituted by the state's attorney of Ward county, who filed a complaint on information and belief alleging that the defendants occupied certain described real property, and had occupied the same for two years past, maintaining thereon a bawdyhouse, and that, unless restrained, they would continue to maintain such common nuisance. The prayer for relief is:

(1) That the place be adjudged and decreed to be a common nuisance, and that an order may issue to abate it.

(2) That the defendants be perpetually enjoined from using the place as a bawdyhouse.

(3) That a temporary injunction be issued enjoining the defendants, until the further order of the court, from occupying and keeping open the premises as such common nuisance.

(4) That a warrant of search of the premises be issued and an in-

ventory of the property therein made, and that there be ordered a seizure of the place and a restraint of the defendants from engaging in prostitution or conducting a house of prostitution within the state.

(5) That the plaintiff have judgment for costs, attorney's fees, and general relief.

The complaint was verified by the state's attorney upon information and belief and was accompanied by affidavits of four qualified persons, each swearing to different occasions when he had been upon the premises and there solicited by one or more of the defendants. Those occasions range from November, 1920, to September 9, 1921. Upon motion of the state's attorney, the district court, on September 23, 1921, ordered that the defendants be enjoined from maintaining a common nuisance upon the premises, and that they be especially restrained during the pendency of the action from using the premises as a bawdyhouse. An order of seizure was also issued directed to the sheriff, commanding him to take possession of the premises and safely lock and hold the same to abide the final judgment in the action. On September 29, 1921, the defendants moved for a dissolution of the temporary injunctional order and for the discharge of the writ of seizure, and the following day an order was entered denying the motion. This appeal is from that order.

The appellants contended that the bawdyhouse statute (chap. 41 of the Penal Code) is unconstitutional and void in that it directs the taking of property and property rights, without due process of law. It is said that the statute authorizes the property of the defendants to be taken without notice, and without an opportunity to be heard, or to cross-examine the witnesses.

The injunctional order was issued in pursuance of § 9645, Compiled Laws of 1913. It is temporary in character, and does not prevent the defendants from using the property in any lawful manner. It only prevents them from maintaining a nuisance or engaging in a course of unlawful conduct pending the final judgment. A bawdyhouse is a nuisance at common law, and is consequently subject to the equitable jurisdiction of courts to abate, even in the absence of statute. A statute that is merely declaratory of the principles upon which equitable interference in such matters proceeds is not unconstitutional. Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. ed. 205, and authorities cited in note L. R. A. 1917B, 1078. In our opinion there can be no serious question of the right of the Legislature to provide for the

issuance of temporary injunctions in such cases. See authorities supra. Without further discussion we hold that the statute in question is clearly valid in so far as it authorizes an action to be maintained by the state's attorney and a temporary injunction to be issued at the commencement of the action which will prevent the continued maintenance of the nuisance pending the final judgment.

But that portion of the order which directs the seizure of the premises stands upon· a different legal foundation. It is based upon a separate section of the statute, namely, § 9646, which reads as follows:

"If, at the time of granting the temporary injunction described in § 9645, an affidavit shall be presented to the court or judge stating or showing that any of the offenses mentioned in § 9644 are transpiring or being carried on upon the premises mentioned in the affidavit, particularly describing the said premises where said nuisances are located contrary to law, the court or judge must, at the time of granting the injunction, issue his warrant commanding the officer serving said writ of injunction at the time of such service to take possession of said room, building or place and take the same into his custody and securely lock and hold the same to abide the final judgment in the action. The expenses for such holding to be taxed as a part of the costs in the action; and such officer shall also take and hold possession of all personal property found on such premises, and shall take and hold the possession of such premises and keep the same closed until final judgment is entered, or until the possession of the same shall be disposed of by an order of the court or judge upon a hearing had before it for such purpose."

It is contended that the above statute is unconstitutional in that it directs the taking of property without due process of law. It is urged that under this statute, without any prior adjudication whatsoever of unlawful use, a person may be dispossessed of his home, and thus deprived of his property until his right to continue possession can be determined. It is well settled that the constitutionality of a statute does not depend upon what is done under it, nor how it has been applied in a particular case, but upon what may be done under its authority. Coe v. Armour Fertilizer Works, 237 U. S. 413, 35 Sup. Ct. 625, 59 L. ed. 1027. Nor is it permissible to show that, if due process were in fact observed in the particular case, the same result would have been reached in the long run. Coe v. Armour Fertilizer Works, supra.

It will be noticed that the statute provides for no hearing of any sort

in advance of the seizure by the officer. All of the anterior proceedings are wholly ex parte. The mere presentation of an affidavit sworn to by any person stating that certain offenses are transpiring upon the premises creates a mandatory duty on the part of the judge to issue a warrant commanding the officer to take and hold possession to abide the final judgment in the action. In our opinion this statute is clearly unconstitutional in that it directs the taking of property without due process of law in violation of both the state and federal Constitutions, and the eighteenth section of the state Constitution, which says that—

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized."

There is no higher property right known to the law than the right of the individual to the possession of his home, and the deprivation of this right, even temporarily, is not to be sanctioned unless ample legal cause be first shown to exist. The home of an individual, high or low, saint or sinner, does not become a nuisance per se upon a complaint signed upon information and belief, accompanied by an affidavit of some person that it is being used as a bawdyhouse. The information may not be well founded, and the affidavit may not be true. Prior to the dispossession commanded by the statute there is no opportunity to determine whether the one is ill-founded and the other false.

A structure fit for the habitation of human beings cannot be a nuisance per se. It can only become a nuisance by virtue of inherent unsafety or through some harmful or illegal use. Where illegal use is relied upon to establish it to be a nuisance, that use must be adjudicated as a fact. When an appropriate judgment is entered to that effect, it may then be promptly abated or otherwise dealt with according to law. Not being a nuisance per se, however, it cannot be treated as such for purposes of abatement prior to such adjudication. By way of emphasis, we may repeat that the property itself is not alleged to be harmful, and it must therefore be presumed to be harmless. It is only the use that is harmful, and such use is promptly enjoined by a temporary injunction. This remedy should be efficacious to put a speedy end to the nuisance without taking the further, and apparently useless, step of seizing the premises without notice to the occupants and without regard to whether

the security of a home be thereby violated.

The distinction between the summary abatement of a nuisance per se through the destruction of the instrumentality in which the nuisance inheres and the like abatement of a nuisance where property capable of lawful use is involved, is well expressed in Freund on Police Power, §§ 525 and 526. The author says:

"525. The power of summary abatement does not extend to property in itself harmless and which may be lawfully used, but which is actually put to unlawful use or is otherwise kept in the condition contrary to law. So, if a certain kind of transportation is a nuisance, this does not justify the tearing up of railroad tracks. A house of ill fame may not be torn down summarily; a building where liquor is kept unlawfully for sale may not be destroyed; and a canal may not be destroyed because not kept in a clean condition. The unlawful use may, however, be punished, and the punishment may include a forfeiture of property used to commit the unlawful act. While in many cases this would be an extreme measure, it is subject to no express constitutional restraint except where the constitution provides that every penalty must be proportionate to the offense. * * *

"526. Such forfeiture is not an exercise of the police power, but of the judicial power; i. e., the taking of property does not directly subserve the public welfare, but is intended as punishment for an unlawful act. Hence forfeiture requires judicial proceedings, either personal notice to the owner, or at least a proceeding in rem with notice by publication."

The statute in question directs that the owner or occupant be dispossessed without any hearing whatsoever. In addition to the authorities cited by Freund, the principles stated will be found to be well illustrated in the recent decision of the Supreme Court of Illinois in People v. Marquis, 291 Ill. 121, 125 N. E. 757, 8 A. L. R. 874.

In view of our conclusion that the statute is unconstitutional in that it directs the taking of property without due process of law and violates the security of persons in their houses by authorizing an unreasonable seizure thereof, we deem it proper to say that through our researches we have been unable to find any bawdyhouse statute going to the extreme lengths of the one in question. This court has previously held that this statute does not authorize the destruction of useful personal property found on the premises. State ex rel. McCurdy v. Bennett et al., 37 N. D. 465, 163 N. W. 1063, L. R. A. 1917F, 1076. It follows

from what has been said that the writ of seizure must be discharged. To this extent, the order appealed from is reversed.

CHRISTIANSON and BRONSON, JJ., concur.

ROBINSON, J. (concurring specially). In this case it appears that each of three detectives subscribed to a paper in the form of an affidavit purporting to be sworn to before another detective. The chances are that the papers were not sworn to, and that they were merely subscribed. Three of the affidavits charge that at a certain time and place Lillie Doe made improper advances to them, and so they characterized the place in which she lived as a bawdyhouse. On the affidavits, without any finding of facts or any adjudication, the defendants were enjoined from continuing to do wrong. They were told not to do it again, and that was all right. The judge likewise issued an order for the sheriff to take possession of their home and to lock and hold the same; that is, to throw the defendants out of their home onto the street without a moment's notice. That was dead wrong. If a bad person can be thrown out of his home in that way, a good person—a judge of the Supreme Court—may be thrown out in the same manner. No person has any security. It is said such a procedure has been sanctioned by the United States Supreme Court. Mugler v. Kansas, 123 U. S. 623, 7 Sup. Ct. 273, 31 L. Ed. 205. The Kansas case was under a common nuisance act providing that—

"Upon a judgment of any court having jurisdiction finding a place to be a nuisance, the proper officer shall be directed to shut up and abate the same."

In reasoning the court says:

"Nor is the court required to adjudge any place to be a common nuisance simply because it is charged by the state to be such. It must first find it to be of that character; that is, (the court) must ascertain, in some legal mode, whether * * * the place * * * is being so used, as to make it a common nuisance."

In this case it does not appear from the warrant of seizure or from any document that the court had made a finding or adjudication as to whether or not the place is a common nuisance. Without first giving defendants an opportunity to be heard, the sheriff is ordered to take

possession of the house and shut it up and throw them onto the street. That is not due process of law, and it is a violation of the constitutional guaranty against unreasonable searches and seizures. Due process of law does not mean than an accused party is granted a trial by jury. It does mean that he cannot be thrown out of his house without some hearing or some form of trial. "In judicial proceedings the law of the land requires a hearing before condemnation." Here is the forceful language of the Supreme Court of the United States:

"That a man is entitled to some notice before he can be deprived of his property is an axiom of law to which no citation or authorities would give additional weight." Roller v. Holly, 176 U. S. 398—409, 20 Sup. Ct. 410, 44 L. ed. 520; Pennoyer v. Neff, 95 U. S. 714, 24 L. ed. 565; Stuart v Palmer, 74 N. Y. 183, 30 Am. Rep. 289.

Very easy it would have been for the court to have issued an order to show cause and to have given defendants some hearing and to have confronted them with the witnesses against them. But the prosecution is under a statute which does not contemplate or provide for any such hearing. Comp. Laws, § 9646. The statute is to the effect that on ex parte affidavits stating certain things the judge shall issue a warrant to dispossess all the parties of their homes without first giving them any opportunity to be heard. The statute is clearly void, and it is void under the decisions cited in the Kansas case. The court there said:

"Nor is the court required to adjudge any place to be a common nuisance simply because it is charged by the state to be such. It must first find it to be of that character; that is, must ascertain in some legal mode, whether the place in question has been or is used so as to make it a common nuisance."

For those reasons the order of seizure should be reversed.


GRACE, C. J. (specially concurring). As we view § 9645, C. L. of 1913, it merely provides for the issuing of a temporary restraining order to prevent the continuance of an alleged nuisance during the pendency of the action, which was commenced to abate it or to restrain a course of unlawful conduct. The restraining order remains in force only until final judgment.

We see no reason why the above section is not a valid one, and we think it is. It is different, however, with § 9646, which, when a tem-

porary injunction is issued, as provided in § 9645, authorizes the court or judge, at the time he issues the temporary injunction restraining the alleged nuisance, also to issue his warrant to the officer serving the writ of injunction to take possession of the room, building, or place into his custody, and to securely lock and hold the same to abide the final judgment in the action, and likewise to take and hold possession of any personal property found on the premises.

It is thus clear from the latter section that the possession of the property, either real or personal, mentioned in the section, may be taken from one against whom the proceeding is brought before there is any opportunity for a hearing, and before final judgment. This clearly would be taking property without due process of law. I am therefore of the opinion that § 9646 is clearly unconstitutional.

In the case of State v. Bennett, 37 N. D. 465, 163 N. W. 1063, L. R. A. 1917F, 1076, it was held that the section last mentioned did not authorize the destruction of useful personal property found on the premises. The writ of seizure should be discharged, and the order appealed from modified accordingly.